UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| ANTHONY LEE ROBINSON, | ) | |
| Plaintiff, | ) | Civil Action No. 7:14cv00114 |
| | ) | |
| v. | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| SHERIFF WEISENBURGER, *et al.*, | ) | By: Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

Anthony Lee Robinson, a former state prisoner proceeding *pro se*, has filed suit under 42 U.S.C. § 1983 alleging violations of his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. ECF No. 40. Defendants Sheriff Jack Weisenburger, Dr. Sherrill, Captain Hutton, Lieutenant Salyers, Officer Pensenger, and Officer Casey ("Defendants") have filed a Motion to Dismiss Amended Complaint, ECF No. 51, to which Robinson timely responded, ECF No. 55. The motion is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 62. Having considered the parties' pleadings, all supporting materials, and the applicable law, I respectfully recommend that the presiding District Judge grant the Defendants' motion to dismiss.

I. Standard of Review

A Rule 12(b)(6) motion to dismiss challenges whether the plaintiff has properly stated a claim upon which relief can be granted. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). The court accepts as true all well-pled facts and construes those facts in the light most

1

favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, "legal conclusions, formulaic recitation of the elements of a cause of action, or bare assertions devoid of further factual enhancements fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Plaintiffs must plead enough facts to "nudge[] their claims across the line from conceivable to plausible," and the court should dismiss a complaint that is not "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Federal courts have an obligation to construe *pro se* pleadings liberally so that any potentially valid claim can be fairly decided on its merits rather than the *pro se* litigant's legal acumen. *Rankin v. Appalachian Power Co.*, No. 6:14cv47, 2015 WL 412850, at *1 (W.D. Va. Jan. 30, 2015) (citing *Boag v. MacDougall,* 454 U.S. 364, 365 (1982)). Still, "a *pro se* plaintiff must . . . allege facts that state a cause of action, and district courts are not required 'to conjure up questions never squarely presented to them.'" *Considder v. Medicare*, No. 3:09cv49, 2009 WL 9052195, at *1 (W.D. Va. Aug. 3, 2009) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)), *aff'd*, 373 F. App'x 341 (4th Cir. 2010).

## II. Facts & Procedural History

Robinson's allegations stem from his detention at the Bristol, Virginia City Jail ("Bristol Jail"), where he was held from February 24, 2012, to June 26, 2013. Am. Compl. ¶ 3, ECF No. 40. From February 24, 2012, to January 16, 2013, Robinson was in pretrial detention; thereafter, he began service of his sentence. *Id.* ¶12. He served two months of that time at the Charlotte

2

Case 7:14-cv-00114-MFU-JCH   Document 63   Filed 08/04/15   Page 2 of 18   Pageid#: 592

County Jail ("Charlotte Jail"), from January 22, 2013, through March 26, 2013. *Id.* At all relevant times, Weisenburger was the Sheriff of Bristol, Virginia, Dr. Sherill was the resident physician at the Bristol Jail, and Salyers, Hutton, Pensenger, and Casey were deputies in the Bristol, Virginia Sheriff's Office. *Id.* ¶¶ 4–8. Robinson names two additional defendants, deputies Frye and King, *id.* ¶¶ 9–10, but neither has been served with this lawsuit, and they are not parties to this motion to dismiss.

Robinson asserts several defects with the conditions of his confinement at the Bristol Jail. His first cell block in the Bristol Jail was overcrowded, forcing him to sleep on the floor and restricting his personal space. *Id.* ¶¶ 13–14, 19. Inmates were let out to exercise for less than one hour per week. *Id.* ¶ 18. The cell block shower also had an open drain with a catch basin rather than a "proper drain." *Id.* ¶ 15. The open drain would flood and "allowed insects and vermin . . . to spread pathegens [sic]" throughout the cell block. *Id*. When Robinson returned to the Bristol Jail after his brief stay in the Charlotte Jail, he was placed in a cell block with the same defects. *Id.* ¶ 39.

Throughout his confinement, Robinson suffered various physical and mental ailments, including chronic dental infections and pain, chronic chest and neck pain, sleep loss, anxiety, and mental anguish *Id.* ¶ 11. Primary among these was the series of dental infections, which ultimately resulted in the loss of two teeth. *Id.* Despite repeated sick-call requests, Robinson was given only antibiotics to treat his infections, *id.* ¶¶ 29, 43, 55, and Tylenol or Motrin for the pain, *id.* ¶ 27. Robinson contends that the Defendants' continued and exclusive treatment of his dental infections with antibiotics constituted negligent care leading to wanton infliction of pain. *Id.* ¶ 29.

3

Salyers was responsible for repackaging medications for distribution within the Bristol Jail. *Id.* ¶ 26. From May 18 to 26, 2013, Salyers gave Robinson antibiotics labeled "A. Robboinson." *Id.* ¶¶ 43–44. When Robinson brought the mislabeling to Pensenger's attention, he denied any error. *Id.* ¶ 46. Salyers also twice gave Robinson prescription antibiotics with handwritten, rather than printed, labels. *Id.* ¶ 26. The antibiotics with handwritten labels were not reported on Robinson's medical record or inmate account. *Id.* Robinson believes these errors in his medication labeling and reporting were deliberate attempts by the Defendants to cover up their over-prescribing of antibiotics. *Id.* ¶ 45.

Robinson further argues that another prisoner, Shaunston Brooks, received better dental care because of his personal connections. Brooks suffered from dental issues at the same time as Robinson and had a brother who worked for the Bristol Virginia Sheriff's Office. *Id.* ¶ 24. Though Brooks's condition was not as serious as Robinson's, he received better care. *Id.*

Robinson's second medical issue involves chest and neck pains that he began experiencing while at the Bristol Jail. *Id.* ¶ 27. These pains were ultimately determined to be stress-induced, *id.* ¶¶ 11, 27, but during his detention at the Bristol Jail and the period relevant to this lawsuit they went undiagnosed and untreated, despite Robinson repeatedly requesting sick call and writing to Dr. Sherill, *id.* ¶ 27.

While at the Charlotte Jail, Robinson had a bout of chest and neck pain and filed a grievance after his requests to see the doctor went unheeded. *Id.* ¶ 34. His grievance resulted in him seeing Dr. Ofogh, who ordered additional tests. *Id.* A nurse at the Charlotte Jail told Robinson that they needed permission from the Bristol Jail medical department to give him care and that the Bristol Jail medical department had denied Robinson's claims of repeated chest pain and dental infections. *Id.* ¶¶ 37–38. After he was transferred back to the Bristol Jail on March 26,

4

2013, *id.* ¶ 35, Robinson filed a grievance requesting that he be given the tests ordered by Dr. Ofogh, *id.* ¶ 40. During the evaluation of this grievance, Salyers denied that any tests had been ordered. *Id.* ¶ 41. Sheriff Weisenburger ultimately denied the grievance. *Id.* ¶ 40.

On May 24, 2013, Robinson experienced severe chest pain and shortness of breath. *Id.* ¶ 48. He repeatedly asked for medical care and was removed to the prisoner visiting room. *Id.* King then told Robinson that the medical staff had instructed that he be returned to his cell block without treatment. *Id.* While walking back, Robinson blacked out, fell down the stairs, and accidentally stuck King in the process. *Id.* Robinson was placed in medical isolation, though his requests for medical treatment continued to go unheeded. *Id.* ¶¶ 48–49. He returned to his cell block after three days without having received any medical care. *Id.* ¶ 50.

In addition to medical issues, Robinson had difficulties with the grievance procedure and his pursuit of legal recourse. He filed a grievance while at the Bristol Jail that was not returned to him or timely advanced by Dr. Sherill and Lieutenant Salyers. *Id.* ¶¶ 30, 31. At one point, Robinson requested a sick call form from Frye, and Frye refused. *Id.* ¶ 20. Robinson then asked for a grievance form to report Frye's refusal and his repeated failures to properly perform his "sick call duties." *Id.* Frye stated, loud enough for the entire cell block to hear, that if Robinson filed a grievance against him he would take away the television and lock down the block. *Id.* Robinson did not file a grievance because he was afraid of reprisal from the other inmates if Frye followed through on his threat. *Id.* ¶ 21. Robinson informed his attorney of this incident by letter and believes that Frye was fired as a result of this letter. *Id.* ¶¶ 21–22.

Robinson additionally did not have access to a law library, as the Bristol Jail did not maintain one. *Id.* ¶¶ 28, 51. In June 2014, King supplied Robinson with an incomplete inmate account report and "1983" filing form and told him to mail the form to an incorrect address. *Id.* ¶

5

52. This faulty information and lack of law library access "impeded" Robinson's previous civil suit, *Robinson v. Bristol Va. City Jail*, No. 7:13cv292, resulting in it being dismissed. *Id.* ¶¶ 52–53.

## III. Discussion

Over seven counts, Robinson alleges that the Defendants denied him basic human needs by keeping him in unsafe conditions, acted deliberately indifferent to his serious medical needs, and interfered with his administrative remedies so as to deny him access to the courts. Am. Compl. ¶¶ 62–68. He contends that these actions violated his right to be free of cruel and unusual punishment under the Eighth Amendment and his due process rights under the Fifth and Fourteenth Amendments. *Id*. As an initial matter, I note that the Fifth Amendment applies only to federal actors and Robinson was in state custody at all relevant times. I therefore recommend that the presiding District Judge grant the Defendants' motion to dismiss Robinson's claims to the extent they allege violations of the Fifth Amendment. I consider the rest of his allegations in turn.

A.   *Conditions of Confinement*

The events described in Robinson's complaint span the period of his pretrial detention—February 24, 2012, to January 16, 2013—and the beginning of the service of his sentence—January 22, 2013, to March 26, 2013. Courts evaluate a pretrial detainee's claims concerning the conditions of his confinement under the Due Process Clause, which prohibits punishment before proper adjudication of guilt. *Dougherty v. Virginia*, No. 7:12cv549, 2013 WL 750140, at *5 n.8 (W.D. Va. Feb. 27, 2013) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–38 (1979)). "To establish that a particular condition of confinement is constitutionally impermissible punishment, the pretrial detainee must show that it was either (1) imposed with intent to punish or (2) not

6

reasonably related to a legitimate non-punitive governmental objective (such that an intent to punish could be inferred)." *Harden v. Bodiford*, 442 F. App'x 893, 895 (4th Cir. 2011); *see also Bell*, 441 U.S. at 535–38.

After conviction, an inmate is protected by the Eighth Amendment from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337 (1991). "To prove a constitutional claim related to an unsafe jail condition, [Robinson] must show that each of the defendant prison officials acted with deliberate indifference—that they knew, subjectively, the challenged condition presented a substantial risk of serious harm and nevertheless failed to take 'reasonable measures' to alleviate it." *Dougherty*, 2013 WL 750140, at *5 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994)). He must also "produce evidence of a serious or significant physical or emotional injury resulting from the challenged condition[]" or "demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

Despite the different analyses, "as a practical matter, the contours of the Due Process Clause in the prison context tend to be coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates." *Dougherty*, 2013 WL 750140, at *5 n.8 (citing *Hill v. Nicodemus*, 979 F.2d 987, 991–92 (4th Cir. 1992)).

Robinson alleges three defects with the conditions of his confinement. First, his cell block was overcrowded, housing at times seventeen or twenty inmates and forcing him to sleep on the floor. Am. Compl. ¶¶ 13–14, 19. Robinson does not say how many inmates the block accommodated, but a hand-drawn diagram he submitted shows that a pod contained seven cells each equipped with a bunk bed, sink, and toilet. *Id.* ¶ 31. Second, the inmates were let out of the cell block to exercise for only one hour per week. *Id.* ¶ 18. Third, the cell block had an open

7

drain and catch basin, which Robinson claims is unsanitary, as it "allows insects and vermin through natural propagation to spread pathegens [sic] throughout the jail" and it would flood. *Id.* ¶ 15. Robinson believes that the unsanitary conditions caused by this open drain led to his repeated infections. *Id.* ¶ 16.

Considering first Robinson's rights as an inmate, "the Eighth Amendment protects prisoners from cruel and unusual living conditions, [but] an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement." *Mathias v. Simpkins*, No. 7:07cv31, 2007 WL 1577336, at *2 (W.D. Va. May 31, 2007) (citing *Rhodes*, 452 U.S. at 347). "[C]onfining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." *Bell*, 441 U.S. at 542. Double or triple celling inmates is not per se unconstitutional, *Mathias*, 2007 WL 1577336, at *2 (collecting cases); however, "overcrowding accompanied by unsanitary and dangerous conditions can constitute an Eighth Amendment violation, provided an identifiable human need is being deprived." *Williams v. Griffin*, 952 F.2d 820, 825 (4th. Cir. 1991). An inmate must demonstrate a serious injury or significant risk of such an injury stemming from the overcrowding and unsanitary conditions to state a claim, as a de minimis injury does not violate the Fourteenth or Eighth Amendments. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) (holding that there is a de minimis level of imposition with which the Constitution is not concerned); *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir.1997) (en banc); *Mathias*, 2007 WL 1577336, at *3 (citing *Strikler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir. 1993)).

8

Robinson's primary argument against the Bristol Jail's occupancy levels and exercise allotment is that they violate two American Correctional Association Guidelines. According to Robinson, guidelines number "4-4132 … states each inmate is to have at least 25 sq ft of unemcumberd [sic] space and if confined for more than 10 hr to have at least 35 sq ft of unencumberd [sic] space per inmate," Am. Compl. ¶ 19, and guidelines number "4-4154 … states inmates to be [sic] allowed at least 1 hr of exercise space and time per day," *id*. ¶ 18. While guidelines from institutions such as the American Correctional Association "may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question." *Bell*, 441 U.S. at 543 n.27; *see also Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 n.13 (1992).

Despite their failure to meet these aspirational guidelines, the conditions described in the amended complaint do not rise to the level of a constitutional violation. In *Williams v. Griffin*, the Fourth Circuit summarized an inmate's allegations while finding a genuine issue of material fact existed as to overcrowding and unsanitary conditions:

> He has described his cell toilet, shared by twelve inmates, as "constantly coated with urine day and night." He has contended that only four showers were available for ninety-six inmates. He has pointed out that the floors leading to the showers were constantly flooded with sewage as a result of toilets that continually leak. In addition, Williams has asserted deprivation of blankets and coats, and that Hoke was infested with insects and vermin.

952 F.2d at 825. Conversely, a court dismissed a conditions of confinement claim by an inmate because:

> Even collectively, the asserted facts that VBCC cells are overcrowded, plaintiff may have had to sleep on the floor near the toilet at various times, can only clean his cell once a day, and is frequently placed in lockdown status do not comprise objectively serious deprivations of his basic human needs, as they do not subject plaintiff to such grave risk that contemporary notions of decency are violated.

9

*Gray v. V.B.C.C. Inmate Hous.*, No. 1:14cv414, 2014 WL 3420483, at *3 (E.D. Va. July 9, 2014). The facts Robinson alleges are much closer to the latter case than the former: he was forced to sleep on the floor, he was rarely let out of the cell block, and the shower drain flooded and was not fashioned to prevent insects and vermin from entering the jail. He does not allege the degree, if at all, that insects and vermin actually infested the Bristol Jail. While this description shows uncomfortable and inconvenient conditions, Robinson does not describe the level of consistent and excessive overcrowding and unsanitary conditions necessary for a constitutional violation. *See Webb v. Deboo*, 423 F. App'x 299, 301 (4th Cir. 2011) (citing *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004), for "holding evidence that cells were crusted with fecal matter, chipping paint, urine, and old food was sufficient to show a substantial risk of serious harm" and *Shannon v. Graves*, 257 F.3d 1164, 1169 (10th Cir. 2001), for "holding that blankets contaminated with sewage constituted substantial risk to human health.").

Additionally, Robinson does not plausibly allege "a serious or significant physical or emotional injury resulting from the challenged condition[]" or "demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka*, 71 F.3d at 166. At most, Robinson alleges that the conditions at the Bristol Jail caused him stress and contributed to his continued dental infections—a medical diagnosis for which he provides no support. These are not constitutionally significant injuries. *See Robinson v. Lopez*, 914 F.2d 486, 490–91 (4th Cir. 1990) (allegations of stress, anxiety, and physical harm consisting of sinus problems and headaches did not amount to "harm of constitutional magnitude"); *Mathias*, 2007 WL 1577336, at *3 (dismissing a conditions of confinement claim for failure to demonstrate injury because "[Mathias] alleges a sinus infection and difficulty breathing, neither of which are serious or significant physical injuries that afford relief under the

Constitution"); *Odighizuwa v. Ray*, No. 7:06cv185, 2006 WL 3041266, at *4 (W.D. Va. Oct. 24, 2006) ("[H]eadaches, fatigue, itchiness, sneezing, chest pains, occasional vomiting, and emotional distress [] are not sufficiently serious to rise to the level of an Eighth Amendment violation."). Moreover, the allegations of marginal overcrowding and an unsanitary drain are not sufficiently egregious to demonstrate "that prison conditions exposed [Robinson] to a substantial risk of harm." *See Webb*, 423 F. App'x at 301 (finding allegations "that severe overcrowding was causing unsanitary conditions, the spread of disease, an increased risk of violence, and lack of access to medical care, among other effects" stated an Eighth Amendment claim); *Williams*, 952 F.2d at 825 (inferring psychological harm and risk of illness and violence from combination of interrelated deficiencies in prison conditions); *Gray*, 2014 WL 3420483 at *3. Accordingly, Robinson does not state a claim that he has been subjected to punishment impermissible under the Eighth and Fourteenth Amendments.

B.      *Medical Needs*

"Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The exact standard of care due to a pretrial detainee in this context has not been precisely defined by the Supreme Court. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (citing *City of Revere v. Mass. General Hospital*, 463 U.S. 239, 243–45 (1983)) ("[T]his Court has never determined what degree of culpability must be shown before the particular constitutional deprivation asserted in this case—a denial of the due process right to medical care while in detention—is established."). Nevertheless, both the Supreme Court and Fourth Circuit have consistently held that a pretrial detainees is entitled to at least as much protection as a convicted prisoner, and deliberate

11

indifference to a detainee's needs violates the Fourteenth Amendment as surely as it would violate a prisoner's rights under the Eighth Amendment. *See, e.g., Revere*, 463 U.S. at 244 ("[T]he due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner."); *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) ("Pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment."); *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992), *as amended* (July 7, 1992).

A deliberate-indifference claim has "two components, objective and subjective. "Objectively, the inmate's medical condition must be 'serious'" in the sense that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson*, 775 F.3d at 178. Subjectively, the prison official must have "actual . . . knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's [own] action or inaction." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The subjective component is an "exacting standard" that demands proof of intent beyond mere negligence, errors in judgment, inadvertent oversights, or disagreements about the prisoner's treatment plan. *Id.*

Robinson presents two medical conditions to which he alleges the Defendants were deliberately indifferent—dental infections and chest and neck pains. Am. Compl. ¶ 11. Concerning the first, Robinson relates that he was given antibiotics for the infections, *id.* ¶¶ 29, 43, 55, and Tylenol or Motrin for the pain, *id.* ¶ 27. Robinson complains that his infections were too serious to be treated only with antibiotics and that the Defendants' refusal to provide him additional testing and treatment amounted to deliberate indifference and "the wanton infliction of pain." *Id.* ¶ 29. Robinson asserts this claim against all Defendants except Hutton. *Id.* ¶¶ 62, 65.

12

These allegations show nothing more than a disagreement between Robinson and Dr. Sherill about the type of care he should receive. Such a disagreement falls short of showing that the medical defendants subjectively acted with a "sufficiently culpable state of mind" to violate the Eighth Amendment. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003); *see Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) ("Jackson's dispute with Defendants' decision not to authorize the particular treatment program he requested . . . amounts to a disagreement with his course of treatment that is not cognizable under the Eighth Amendment."); *Richardson v. Grievance Coordinator*, No. 7:14cv470, 2014 WL 5147916, at *1 (W.D. Va. Oct. 14, 2014) (Urbanski, J.) ("A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment.").

Furthermore, "non-medical jail employees may rely on the opinion of the medical staff as to the proper course of an inmate's treatment" and cannot be held liable under the deliberate-indifference standard unless they were "personally involved with a denial of treatment or deliberately interfered with the medical staff's treatment." *Reid v. Newton*, No. 3:13cv572, 2014 WL 1493569, at *15 (E.D. Va. Apr. 14, 2014). Robinson's allegations against the non-medical defendants are based upon their implementation of Dr. Sherill's prescribed antibiotic treatment plan; he does not allege that they denied or interfered with his prescribed treatment. The medication labeling snafu and purported nepotism in treatment have no constitutional significance and add nothing to his claims. Robinson thus fails to state a claim concerning the care of his dental infections.

Robinson's chest and neck pain from stress, Am. Compl. ¶¶ 11, 27, do not constitute a serious medical need. "Such a need usually involves a condition that threatens loss of life, illness or permanent disability. Conditions or delays that cause or perpetuate pain may also show

serious medical need." *Jones v. Vonder-Vander*, No. 7:09cv55, 2009 U.S. Dist. LEXIS 114261, at *9 (W.D. Va. Nov. 20, 2009) (Urbanski, M.J.) (citations omitted). For a claim based on failure to treat pain to rise to the level of a constitutional violation, the underlying condition that caused the pain must be sufficiently serious. *Cf. Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978) (finding failure to promptly treat broken arm, which caused excruciating pain, provided sufficient allegations of deliberate indifference to survive a motion to dismiss); *Finley v. Trent*, 955 F. Supp. 642, 646 (N.D. W.Va. 1997) (chronic pain from arthritis presented serious medical need).

Robinson alleges that he was diagnosed, presumably after he left the Bristol Jail, with stress that was the cause of his chest and neck pain. Stress, and any pain associated with it, is not in itself a serious medical need of constitutional significance. *See Robinson*, 914 F.2d at 490–91; *Odighizuwa*, 2006 WL 3041266, at *4; *see also Wallace v. Chapman*, No. 1:13cv1330, 2014 WL 61135, at *3 (E.D. Va. Jan. 7, 2014) (finding that chest pain that made prisoner think he was having a heart attack was not a serious medical need). Had prison officials been aware of a serious medical condition and failed to secure medical treatment for Robinson, an inference of deliberate indifference would arise. *See Cooper v. Dyke*, 814 F.2d 941, 945 (4th Cir. 1987) ("government officials who ignore indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs."); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). But here, Robinson alleged pain that he attributes to an underlying condition—stress, which is not a serious medical need. Indeed, he alleges that the stress was caused by "improper conditions" at the Bristol Jail, Am. Compl. ¶ 27, a situation that, unlike a broken arm or chronic arthritis, appears to implicate issues other than

14

medical treatment. Accordingly, I find that Robinson has failed to state a claim for deliberate indifference to a serious medical need.

C.     Access to Courts

The Constitution guarantees pretrial detainees and inmates alike reasonable access to the courts in order to "attack their sentences [and] challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Harden v. Bodiford*, 442 F. App'x 893, 896 (4th Cir. 2011). This guarantee requires prisons to grant prisoners the capability to bring claims before the court, but it does not mandate any particular methodology nor confer a "freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351, 356. The Supreme Court "le[ft] it to prison officials to determine how best to ensure that inmates . . . have a reasonably adequate opportunity to file nonfrivolous legal claims." *Id.* at 356. Additionally, the right of access to courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, "an inmate cannot rely on conclusory allegations but must instead allege an actual injury or specific harm or prejudice that has resulted from the denial." *Harden*, 442 F. App'x at 893 (citing *Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc)).

Robinson raises three allegations concerning his access to courts. First, Robinson's use of the grievance system was stymied by Salyers and Dr. Sherill's failure to return or timely advance a grievance, Am. Compl. ¶¶ 30, 31, and Frye's threat to lock down the cell block and take away its television if Robinson filed a grievance against him, *id.* ¶ 21. Second, the Bristol Jail did not maintain a law library for inmate use. *Id.* ¶¶ 28, 51. Finally, King supplied Robinson with an incomplete inmate account report and "1983" filing form and told him to mail the form to an

15

incorrect address. *Id. ¶* 52. This "incorrect information along with [Robinson's lack] of access to a law library impeded" his earlier civil suit, which was dismissed. *Id.* ¶¶ 52–53.

Robinson's first two allegations summarily fail to state a claim. An inmate has no constitutional right to participate in grievance proceedings. *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994). Also, as stated above, an inmate does not have a "freestanding right to a law library." *Lewis*, 518 U.S. at 351. These allegations do not rise to the level of a constitutional violation and should be dismissed.[1] *See, e.g.*, *Hoglan v. Robinson*, No. 7:13cv258, 2014 WL 4680704, at *10 (W.D. Va. Sept. 19, 2014) (dismissing allegations concerning grievance procedures and access to a law library for failure to state a claim).

In Robinson's final allegation, he fails to identify an actual injury stemming from King's alleged actions. Though he claims King provided an incomplete "1983" filing form and incorrect mailing address in June 2013 that impeded his previous civil suit, the docket from that suit shows that Robinson successfully filed a complete form complaint under 42 U.S.C. § 1983 on June 24, 2013. Complaint at 1, *Robinson v. Bristol Va. City Jail*, No. 7:13cv292 (W.D. Va. June 24, 2013), ECF No. 1. Any assertion that Robinson lacked access to the courts during his earlier suit is belied by the twelve motions he filed over its four-month duration. *See Robinson v. Bristol Va. City Jail*, No. 7:13cv292, ECF Nos. 8, 11, 15–22, 28–29. The case was ultimately dismissed because he named the wrong parties in his original complaint and his motion to add the proper defendants failed to provide specific allegations that would put the new defendants on notice of

---

[1] Robinson also alleges that Frye's threat constituted an assault. "The tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003). Nothing in Frye's threat to lock down the cell block and take away the TV reasonably threatened an imminent battery by Frye. Robinson's allegation of assault is baseless and of no constitutional import.

16

the charges against them. *See generally* Mem. Op. 2–6, *Robinson v. Bristol Va. City Jail*, No. 7:13cv292 (W.D. Va. Aug. 30, 2013) (Urbanski, J.), ECF No. 30.

Further, that dismissal was without prejudice, allowing Robinson to fix these deficiencies, which he did with the present litigation. This suit was filed five months after his previous suit's dismissal and pursues the same claims—this time against other parties. *See* Complaint at 1 & *passim*, ECF No. 1. Contrary to Robinson's allegations, he appears to be readily accessing the courts to challenge his conditions of confinement. As such, I can find no injury stemming from any alleged actions by Defendants and no basis for a constitutional claim of denial of access to the courts. *See Richardson*, 2014 WL 5147916, at *2 (rejecting denial of access claim for failure to plead a specific injury).

D.  *Unserved Defendants*

Although neither King nor Frye have been served with the lawsuit, for the reasons discussed above, I recommend that they be dismissed as Robinson has failed to state a claim against them. 28 U.S.C. § 1915A(b)(1).

IV. Conclusion

For the foregoing reasons, Robinson's allegations fail to state a claim upon which relief can be granted. Therefore, I respectfully recommend that the presiding District Judge **GRANT** the Defendants' motion to dismiss, ECF No. 51, and dismiss this action.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings

17

>or recommendations made by the magistrate judge. The judge may also receive
>further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and unrepresented parties.

ENTERED: August 4, 2015

Joel C. Hoppe
United States Magistrate Judge